IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**RACHEL ANN RIGGIO,**            CASE NO. 3:22 CV 997

    Plaintiff,

    v.                                             JUDGE JAMES R. KNEPP II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                 **MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Plaintiff Rachel Ann Riggio seeks judicial review of an adverse Social Security benefits decision under 42 U.S.C. § 405(g). This case was referred to Magistrate Judge James E. Grimes, Jr. for a Report and Recommendation ("R&R") under Local Civil Rule 72.2(b)(2). Judge Grimes recommends this Court affirm the Commissioner's final decision. (Doc. 14). Plaintiff filed objections to the R&R (Doc. 15), and the Commissioner filed a response thereto (Doc. 16). For the reasons set forth below, the Court adopts the R&R in part and affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff filed for disability insurance benefits in December 2019, alleging a disability onset date of November 17, 2019. *See* Tr. 13. Following the administrative process, an administrative law judge ("ALJ") issued a written decision on March 5, 2021, finding Plaintiff not disabled. (Tr. 13-27). This appeal ultimately followed. (Doc. 1).

Plaintiff raised two arguments regarding the ALJ's decision. (Doc. 9). First, she argued the ALJ's decision was not supported by substantial evidence because the ALJ failed to consider the

effects of Plaintiff's multiple hospitalizations and medical appointments on her ability to maintain regular attendance in an employment setting. *Id.* at 13-17. Second, she argued the ALJ failed to properly evaluate and explain consideration of the state agency psychological consultants' opinions. *Id.* at 17-22.

In his R&R, Judge Grimes concluded first that the ALJ did not err by omitting absenteeism from Plaintiff's RFC. (Doc. 14, at 23-29). He found Plaintiff waived the absenteeism issue by failing to raise it before the agency, and even if not waived, the omission was supported by substantial evidence in the record. *Id.* Second, Judge Grimes concluded Plaintiff similarly waived her challenge related to the state agency psychologist opinions, and alternatively that the ALJ properly evaluated those opinions. (Doc. 14, at 30-41). He recommends the Court affirm the Commissioner's decision. *See* Doc. 14.

## STANDARD OF REVIEW

Under the relevant statute:

> Within fourteen days of being served with a copy [of a Magistrate Judge's R&R], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.

28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b)(2)-(3).

In Social Security cases, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Heston v. Comm'r*

*of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). If the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

### DISCUSSION[1]

Plaintiff raises four objections to the R&R. First, she argues the absenteeism issue "was not waived merely because Riggio's hearing attorney didn't *specifically* raise the issue before the Agency." (Doc. 15, at 1). Second, she contends the R&R's other reasons for rejecting her absenteeism argument "ignore relevant case law." *Id.* at 5. Third, she argues she "did not waive her arguments regarding the ALJ's analysis of the state agency doctors' opinions." *Id.* at 7. Fourth, she argues the ALJ's decision "'as a whole' does not sufficiently explain how the ALJ considered the supportability or consistency of the state agency doctors' opinions." *Id.*

For the reasons set forth below, the Court declines to adopt the R&R's analysis regarding waiver but adopts the R&R's conclusion that the ALJ's decision should be affirmed.

Objections One and Three – Waiver

In her first and third objections, Plaintiff argues the Magistrate Judge incorrectly found she had waived her arguments by failing to raise them at the ALJ hearing or in her administrative appeal to the Appeals Council.

The Commissioner did not argue waiver in her brief to the Magistrate Judge. *See* Doc. 11. Rather, she argued the ALJ's decision (as to both of Plaintiff's arguments) was supported by

---

1. Neither party objects Judge Grimes's summary of the medical record. Because the Court incorporates that portion of the R&R into this Opinion, it need not repeat Plaintiff's medical history, which was thoroughly described by Judge Grimes.

3

substantial evidence. As such (and because the Court finds the R&R's alternative conclusion correct), the Court declines to adopt the R&R insofar as it is based on waiver.

Objection Two: Absenteeism

In her second objection, Plaintiff contends the Magistrate Judge ignored relevant caselaw in finding the ALJ's omission of absenteeism from the RFC supported by substantial evidence. However, the Court agrees with the R&R's conclusion that the ALJ did not err in not including an absenteeism limitation in the RFC.

The R&R explains:

> Riggio focuses on a discrete 10-month window that closed six months before her hearing. But she fails to account for the fact that her repeated hospitalizations occurred during a period of heightened psychiatric distress and were induced by Riggio's medication non-compliance and external stressors in her life that have since been greatly alleviated. And she doesn't account for the fact that, as the ALJ stated, she has responded well to treatment. So adopting Riggio's position would obligate the ALJ to have, *sua sponte*, determined that absenteeism ought to be part of Riggio's RFC based on an estimate of the likely frequency and duration of a hypothetical series of future hospitalizations, which would have in turn been based on a finite 10-month period of time without any factual, statistical, or expert opinion evidence to support such speculation.

(Doc. 14, at 25-26). The R&R also accurately notes that the record did not contain any medical opinion evidence about absenteeism affecting Plaintiff's ability to work. *Id.* at 26-27.

The record reflects that Plaintiff was hospitalized in November 2019 after a suicide attempt (Tr. 323, 413-14, 418-19); March 2020 for suicidal ideation (Tr. 1265, 1290); May 2020 for suicidal ideation (Tr. 1053, 1057); and August 2020 for depression and suicidal ideation (Tr. 1442). It also reflects monthly therapy appointments from July 2020 to February 2021 and monthly treatment sessions with her treating nurse throughout much of the relevant time period, as well as other related appointments. *See* Tr. 1499, 1519, 1527, 1538, 1544, 1547, 1591, 1605, 1608, 1618, 1634, 1639, 1644, 1644, 1660.

In short, Plaintiff contends the ALJ (and the Magistrate Judge) did not properly consider the effect of her hospitalizations or medical appointments on her ability to perform full-time work.

In her analysis, Plaintiff calculated that during the time period from November 2019 to August 2020, she spent 32 to 39 days hospitalized. (Doc. 9, at 15). She further cited the Vocational Expert's testimony at the ALJ hearing that employers would tolerate up to one absence per month, approximately eight times per year, and if an individual continued to be absent beyond that (including arriving later or leaving early) "on a regular and ongoing basis, it would most likely be met with reprimand and/or termination." (Tr. 61-62). Plaintiff objects to the R&R's statement that "[a] more accurate average [of monthly absences], . . . results when Riggio's absences are divided by the entire relevant time period of her alleged disability, starting on the alleged onset date, and ending on the date of the ALJ's decision" (Doc. 14, at 28), contending such statement is presented without authority. *See* Doc. 15, at 6. She argues this implies her impairments must last the entire adjudicatory period, which is not the case. *Id.* (citing 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.")).

The Court need not delve into whether Plaintiff's or the Magistrate Judge's math is accurate or supported. This is because the conclusion does not turn on the math; separately, the R&R correctly explained that "[m]any of the factors that led to Riggio's repeated hospitalizations were resolved by the date of the hearing in February 2021, during which Riggio confirmed that she had not required inpatient treatment in six months." (Doc. 14, at 26) (citing Tr. 51). Most notably, the R&R (and the ALJ decision) highlighted evidence of improvement and discussed that Plaintiff's hospitalizations often coincided with "heightened psychiatric distress and were induced by Riggio's medication non-compliance and external stressors in her life that have since been greatly

5

alleviated." (Doc. 14, at 25-26). As discussed in greater detail *infra*, the Court finds the ALJ could – and did – properly observe that these hospitalizations often coincided with medication non-compliance. Moreover, the Court agrees with the R&R's statement that Plaintiff "cannot show that she would be absent any additional days per month due to future inpatient hospitalizations, since there is no evidence, statistic, or opinion indicating that she will likely need such hospitalization." (Doc. 14, at 29). Thus, for these reasons, the Court agrees with the R&R's conclusion that Plaintiff has not shown her hospitalizations required the ALJ to include an absenteeism limitation in her RFC.

Plaintiff further objects to the R&R's statement that she "failed to show how her ongoing treatment obligations would affect her, having failed to establish that either of her monthly appointments requires a *full day* off from work[.]" (Doc. 15, at 6) (quoting Doc. 14, at 29) (emphasis added by Plaintiff). She cites the Vocational Expert's testimony that leaving early or arriving late to work was relevant to the question regarding employer tolerance for absenteeism. (Doc. 15, at 6-7) (citing Tr. 61-62). However, the R&R's statement in full was: "Riggio has failed to show how her ongoing treatment obligations would affect her, having failed to establish that either of her monthly appointments requires a full day off from work *or that they cannot be scheduled to avoid a work absence*." (Doc. 14, at 29) (emphasis added). Other courts have rejected the argument that medical appointments alone, without additional evidence, are sufficient to require an absenteeism limitation in the RFC, particularly where there is no statement from a physician regarding absenteeism. *See, e.g., Mullin v. Colvin*, 2015 WL 5096028, at *14 (W.D. Mo.) ("In this case, there is no evidence that plaintiff would be unable to schedule multiple medical appointments on the same day or schedule appointments before or after her normal work hours. There is no evidence that plaintiff's impairments or treatment will likely require her to miss 10 to

6

14 full days of work per year as plaintiff suggests in her brief. As a result, plaintiff's arguments on this basis are without merit."); *Peters v. Astrue*, 2009 WL 6326804, at *11 (N.D. W.Va.), *report and recommendation adopted*, 2010 WL 1369245 (N.D. W. Va.) ("Plaintiff argues that her history of medical appointments demonstrates that she would be unable to work full-time. However, no doctor opined that Plaintiff is unable to work because of numerous doctor appointments. Plaintiff does not rely on a medical opinion that she is unable to work due to frequent absenteeism, but instead she presents her history of appointments in support of her argument."). The Court finds this rationale persuasive and agrees that Plaintiff has not established – by citing her medical appointments – that the ALJ was required to include an absenteeism limitation in the RFC.

For these reasons, the Court agrees with the R&R's conclusion that the omission of an absenteeism limitation from Plaintiff's RFC is supported by substantial evidence. Plaintiff's objection on this point is overruled.

Objection Four: Consideration of State Agency Physician Opinions

In her fourth objection, Plaintiff disputes the Magistrate Judge's conclusion that the ALJ's decision "as a whole" adequately explained the ALJ's consideration of the state agency physician opinions. To the Magistrate Judge, Plaintiff's argument was two-fold. First, she argued the ALJ failed to properly explain the consistency and supportability of those opinions (and attacked these factors factually based on the record). Second, she argued the ALJ should have included a limitation to "superficial" social interaction, as both state agency reviewing psychologists offered such an opinion and the RFC did not include such a limitation. *See* Doc. 9, at 17-22. Her objections to the R&R seem to focus solely on the first argument; however, the Court addresses both below.

The relevant regulation requires the ALJ to evaluate the persuasiveness of all medical opinions using various factors. 20 C.F.R. § 404.1520c. Supportability and consistency are the most

7

important factors, and an ALJ must explain those factors when evaluating opinion evidence. 20 C.F.R. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision[.]"). As Plaintiff seemingly concedes, an ALJ is not, however, required to use the words "supportability" or "consistency" in order to satisfy this requirement. *See* Doc. 15, at 8. And courts have applied a harmless error analysis to the articulation requirement regarding these factors. *See, e.g.*, *Johnnie T. v. Comm'r of Soc. Sec.*, 2023 WL 6056457, at *10 (S.D. Ohio) (finding harmless error analysis test in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004), applies to violations of 20 C.F.R. § 416.920c(b)(2)); *see also id.* ("Accordingly, an ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be excused as harmless error if: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met.") (citing *Wilson*, 378 F.3d at 547).

Plaintiff first objects to the R&R's statement that the ALJ "pointed to the evidence with which the opinions were consistent". (Doc. 14, at 33) (citing Tr. 21). She contends that the ALJ did not, in fact do so. On review, the Court finds Plaintiff's point well-taken and agrees the ALJ did not specifically point to consistent evidence within the paragraph discussing the state agency psychologists' opinions. The only evidence the ALJ cited after stating the opinions are "consistent with the record as a whole" were the opinions themselves (*see* Tr. 21) (citing Exhibits 1A, 2A, 7A, and 8A, which contain the state agency administrative opinions/findings on initial review and reconsideration)). Following this citation, the ALJ simply restated the limitations she ultimately

8

found in the RFC. *See* Tr. 21. Thus (in this paragraph), the ALJ at best stated that the initial and reconsideration state agency psychologists' opinions were consistent with one another.

However, the ALJ also stated that she found the state agency psychologists' opinions "consistent with the record as a whole". (Tr. 21). This record (much of which is what the state agency psychologists reviewed in formulating their opinions) was thoroughly summarized in the preceding pages. (Tr. 19-20). And, later on the same page of her decision, when discussing the opinion of Plaintiff's treating nurse, Carol Krieger, the ALJ cited specific evidence, contrasting it to the limitations Krieger offered (which were more extreme than those offered by the state agency reviewing psychologists):

> The claimant is noted to have good attention and concentration and intact memory (3F:27; 8F:49). Additionally, mental health records note significant improvement when compliant with her medi[c]ation and the claimant currently works 22 hours per week (Hearing Testimony; 5F:4; 6F:145). She indicated that she will spend six hours of her day on Facebook or talking with her family members (Hearing Testimony). The claimant reported that she is able to prepare simple meals, do laundry, and perform household chores (Id.). She further indicated that she is able to bath and dress herself (Id.).

(Tr. 21). Earlier in the opinion, the ALJ cited much of this same evidence (among additional evidence) in evaluating the "paragraph B" criteria for mental impairments. *See* Tr. 17. In this analysis, the ALJ contrasted Plaintiff's claimed limitations with abilities suggesting lesser limitations. *Id.*

Plaintiff further appears to make a cherry-picking argument, arguing that "[t]he ALJ's emphasis on mainly the 'normal' periods denotes a lack of substantial evidence . . . To the extent she concluded that any opinion was either consistent or inconsistent with the record as a whole, it was necessary for her to actually show she considered the *entire* record." (Doc. 15, at 8). But "a[n] ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party", *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th

9

Cir.2006), and such cherry-picking arguments are rarely successful, *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014) (allegation of cherry-picking evidence by an ALJ "is seldom successful because crediting it would require a court to re-weigh record evidence." (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")). Upon review, the Court finds the ALJ did not improperly "cherry pick" the record. The ALJ's summary of the record demonstrates a waxing and waning of symptoms, including resulting hospitalizations. *See* Tr. 19-20. And this evidence is the same evidence upon which the state agency physician opinions were based. Thus, the ALJ's evaluation of that evidence indirectly addresses the consistency and supportability of the state agency psychologist opinions therewith. *Cf. Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010) ("the administrative law judge's findings challenge the supportability and consistency of Dr. Moore's diagnoses with the other evidence in the record").

And (as noted in brief above with respect to absenteeism) the Court finds no error in the R&R's consideration of Plaintiff's improvement when compliant with medications. First, although the ALJ did not explicitly state "Plaintiff's hospitalizations appeared to be the result of medication noncompliance", a review of the decision demonstrates that the ALJ did, in fact, consider this a factor. *See, e.g.,* Tr. 19 ("mental health records from May 2019 indicate the claimant as stable and that she did not require medication changes"); Tr. 19 ("In March [2020], the claimant presented to the emergency room stating that she had been off her medication for the past two weeks and that she started feeling suicidal . . . Over the course of her stay, the claimant reported an improvement in her mood . . ."); Tr. 20 ("In May [2020], the claimant was seen at St. Charles Hospital with complaints of suicidal thoughts She reported she had not taken her medication for [f]our days due

10

to nausea . . ."); Tr. 20 ("In November [2020], the claimant reported that she was stable and did not require medication changes."); Tr. 22 ("Mental health records generally show a good response to treatment and medications[.]").

Plaintiff argues such a consideration is improper in the mental health context, because the Magistrate Judge did not "evaluate whether the ALJ considered possible reasons for medication non-compliance, including mental health reason[s] – before using her non-compliance against her in the decision." (Doc. 15, at 9) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009)). The Court disagrees. "For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White*, 572 F.3d at 283 (citing *Pate–Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)). But where there is no evidence that explains the lack of treatment (or lack of compliance with medication), an ALJ may properly rely on the lack of treatment as a factor in evaluating a claimant's limitations. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) ("[U]nlike in *Pate–Fires*, there is little or no evidence expressly linking [plaintiff's] mental limitations to such repeated noncompliance."); *see also Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 599 (6th Cir 2018). Thus, courts have found no error in considering medication noncompliance when there is a lack of evidence connecting that noncompliance or lack of treatment to the mental health disorder itself. *See, e.g.*, *Bass v. Colvin*, 2015 WL 1299266, at *22 (N.D. Ohio) (finding no error in consideration of plaintiff's failure to obtain treatment and take medication where plaintiff did not identify evidence that these were a result of his mental condition); *Ross v. Comm'r of Soc. Sec.*, 2013 WL 1284031, at *13 (N.D. Ohio) ("Plaintiff did not provide any evidence linking her mental illness to noncompliance[.]").

Plaintiff additionally contends "the Magistrate Judge's analysis is flawed where he presumes the ALJ's citations to Riggio's 'speaking to friends on Facebook' or using public

11

transportation, for example, equated to an ability to perform full-time work and thus adequately supported the ALJ's overall determination". (Doc. 15, at 9) (citing Doc. 14, at 37). Plaintiff is correct that the R&R cites such things, and that the Sixth Circuit has held that "somewhat minimal daily functions are not comparable to typical work activities." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cr. 2007). But the Court finds neither the Magistrate Judge nor the ALJ committed the error of equating these activities with the ability to perform full time work. Rather, the ALJ cited them in contrasting Plaintiff's claimed limitations against other evidence of record suggesting she was less limited.

For the above reasons, the Court finds that to the extent the ALJ erred in failing to articulate how he considered the factors of supportability and consistency in relation to the state agency psychological consultant opinions, the Court finds such error harmless because (1) the ALJ made findings consistent with the opinion, and (2) the goal of the regulation was otherwise met as the opinion indirectly addressed those factors. *See Wilson*, 378 F.3d at 547. As such, Plaintiff's objections in this regard are overruled.

Further, as it relates to Plaintiff's objection to the lack of "superficial interaction" limitation in the RFC, the Court finds no error. An ALJ is not required to adopt every limitation opined by a physician, even if she finds such an opinion persuasive. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). And here, although the ALJ did not specifically include a "superficial" interaction limitation, the mental RFC determination contained significant limitations:

> She can perform simple, routine, and repetitive tasks, but not at a production rate pace (so, for example, no assembly line work); and can respond appropriately to occasional interaction with supervisors, co-workers, and the general public. She can tolerate few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work environment. Any necessary changes need to occur infrequently and be adequately and easily explained.

(Tr. 17-18). And although the ALJ found the state agency psychologists' opinions persuasive, the ALJ "is not required to recite the medical opinion of a physician in his residual functional capacity finding," *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). This is so because "[t]he responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Id.* And "[t]he ultimate question the Court must address in its evaluation of the ALJ's decision is whether she meaningfully considered the type of interactions Plaintiff can have in a work environment." *Andrea B. v. Comm'r of Soc. Sec.*, 2023 WL 128288, at *7 (S.D. Ohio). The Court is persuaded the ALJ did so here in her limitations to simple, routine tasks with static job duties and infrequent and easily explained changes. The Court therefore agrees with the R&R that the Commissioner's decision should be affirmed.

## Conclusion

For the foregoing reasons, Plaintiff's objections are OVERRULED, Judge Grimes's R&R (Doc. 14) is ADOPTED IN PART (as modified and supplemented herein) as the Order of this Court, and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

    s/ *James R. Knepp II*
    UNITED STATES DISTRICT JUDGE